CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 30, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TYREK CALDWELL, | ) | |
| Plaintiff, | ) | Civil Action No. 7:24-cv-00534 |
| | ) | |
| v. | ) | |
| | ) | By: Elizabeth K. Dillon |
| W.R. FROSELL, | ) | Chief United States District Judge |
| Defendant. | ) | |

**MEMORANDUM OPINION**

*Pro se* plaintiff Tyrek Caldwell, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that Officer W.R. Frosell illegally seized him, used excessive force against him, and arrested him without probable cause. (Compl., Dkt. No. 1.) Before the court is Officer Frosell's motion for summary judgment. (Motion, Dkt. No. 30.) Mr. Caldwell filed opposition to the motion (Opp., Dkt. No. 36), accompanied by a declaration in support ((Caldwell Decl., Dkt. No. 36-1), and later an additional affidavit in support. (Suppl. Aff., Dkt. No. 41.) Officer Frosell filed a reply (Reply, Dkt. No. 39), and Mr. Caldwell filed a sur-reply. (Sur-Reply, Dkt. No. 43.)

For the reasons stated below, Officer Frosell's motion for summary judgment will be granted.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the summary judgment record and are undisputed, except where noted.

On the evening of November 6, 2023, Officers W.R. Frosell, A.G. Garcia, and Brandon Bailey of the Roanoke Police Department were dispatched to 1143 Pilot Street Northwest in

Roanoke.[1] (Frosell Decl. ¶ 3, Dkt. No. 31-1; Garcia Decl. ¶ 3, Dkt. No. 31-2.) The officers were responding to a complaint of a fight at the abandoned Maple Grove Apartments at that address. (*Id.*) The apartments were known to the officers, who had received prior complaints of trespassing, narcotic use, and burglary there. (Frosell Decl. ¶ 4; Garcia Decl. ¶¶ 4–5.) The owner of the apartments had asked the police department to patrol the area for trespassers and bar nonresidents they found on the property. (Frosell Decl. ¶ 5; Garcia Decl. ¶ 6.) The parties disagree as to whether there are tenants at the apartments: Officer Frosell states that the properties are abandoned (Frosell Decl. ¶ 4; Garcia Decl. ¶ 5), while Caldwell states that there were tenants in the property at the time. (Suppl. Aff. at 1.)

Upon arriving at 1143 Pilot Street, Officers Frosell and Garcia activated their bodycams (Frosell Decl. ¶ 7; Garcia Decl. ¶ 8; Frosell Video, Dkt. No. 31-3; Garcia Video, Dkt. No. 31-4), and then all three officers entered the first building of the Maple Grove Apartments. (Frosell Decl. ¶ 9; Garcia Decl. ¶ 10.) A "No Trespassing" sign was posted above the doorway of the building. (Frosell Video 1:34; Garcia Video 1:44.)

The door that the officers entered opens onto a narrow, split-level foyer, with an ascending staircase to the right upon entry and an abutting, descending staircase to the left. (Frosell Decl. ¶¶ 10–11; Garcia Decl. ¶¶ 11, 13; Frosell Video 1:53; Garcia Video 1:51.) When the officers entered the building, they encountered Mr. Caldwell seated on the ascending staircase, with his hands in the front pocket of his sweatshirt. (Frosell Decl. ¶¶ 11–12; Garcia Decl. ¶¶ 13, 17; Caldwell Decl. ¶ 1; Frosell Video 1:57; Garcia Video 1:55.) Mr. Frosell is a large individual. (Frosell Decl. ¶ 16; Garcia Decl. ¶ 20; *see generally* Frosell Video; Garcia

[1] Mr. Caldwell suggests, to the contrary, that because the officers' bodycam videos demonstrate "that the officers were all talking about citizens rights and laughing about each officers['] choice of coffee" this demonstrates "that all officers were not investigating a possible fight." (Suppl. Aff. at 2.)

Video.) Mr. Caldwell was inside the building seeking shelter from the cold while waiting for a ride.[2] (Caldwell Decl. ¶ 1.) At the same time, the officers also encountered a woman, hereinafter called Ms. Doe, seated on the descending staircase with a tie-off on her arm and in the process of using a needle to inject something into her arm. (Frosell Decl. ¶ 10; Garcia Decl. ¶¶ 11–12; Frosell Video 1:50; Garcia Video 1:49.) Once inside, Officers Frosell and Bailey began to speak with Mr. Caldwell while Officer Garcia began to speak with Ms. Doe. (Frosell Decl. ¶ 11; Garcia Decl. ¶ 14; Frosell Video 2:00.)

Officer Bailey was standing inside the doorway in front and to the right of Officer Frosell, and the officers directed Mr. Caldwell to remove his hands from his pocket. (Frosell Decl. ¶¶ 12–13; Garcia Decl. ¶¶ 17–18; Caldwell Decl. ¶ 2; Frosell Video 2:02–2:08; Garcia Video 2:03–2:09.) Meanwhile, Officer Bailey drew a canister of pepper spray and aimed it at Mr. Caldwell. (Opp. at 1; Frosell Video 2:04–2:08; Garcia Video 2:05–2:09.) Six seconds after he was initially asked to, Mr. Caldwell removed his empty hands from his front sweater pocket and then he stood up. (Frosell Decl. ¶ 13; Garcia Decl. ¶ 18; Caldwell Decl. ¶ 2; Frosell Video 2:08–2:13; Garcia Video 2:09–2:14.) Officer Bailey then pushed Mr. Caldwell back into a seated position on the stairs with his fist. (Caldwell Aff. in Supp. at 1; Frosell Decl. ¶ 14; Caldwell Decl. ¶ 2; Frosell Video 2:14–2:15; Garcia Video 2:15–2:16.) Officers Bailey and Frosell then asked for Mr. Caldwell's identification, which he did not give in response. (Frosell Video 2:20-2:37.) The officers then announced that they believed Mr. Caldwell was trespassing and that he was being detained for trespassing.[3] (Caldwell Decl. ¶ 3; Frosell Video 2:27–2:46.) The officers

[2] Mr. Caldwell's verified complaint (Compl. at 2, Dkt. No. 1), states that he was "outside . . . waiting for a ride" when the officers arrived (Caldwell Aff. in Supp. at 1, Dkt. No. 1), but in his declaration in support of his opposition to the motion for summary judgment, he has amended his statement to be in line with Officers Frosell and Garcia's declarations, and their bodycam footage. (Caldwell Decl. ¶ 1.)

[3] Mr. Caldwell alleges that he a guest of a resident and was not trespassing at the Maple Grove Apartments, but, notably, he does not allege that he told the officers this. (Opp. at 1; Caldwell Decl. ¶ 3.)

then placed Mr. Caldwell in handcuffs and seated him in a chair right outside the doorway to the building on the porch. (Caldwell Aff. in Supp. at 1; Frosell Decl. ¶¶ 15-17; Garcia Decl. ¶¶ 19–21; Caldwell Decl. ¶¶ 3, 7; Frosell Video 2:52-3:42.) As he was being led outside, Mr. Caldwell identified himself to the officers. (Frosell Decl. ¶ 18; Frosell Video 3:15.) Officers Frosell and Bailey then spoke with Mr. Caldwell for several minutes, until Officer Frosell reentered the building. (Frosell Video 3:42-7:55.) In this conversation, Mr. Caldwell admitted that he did not live in the building, and Officer Frosell stated that Mr. Caldwell matched the description of the individual alleged to have been involved in the fight at the apartments. (Frosell Video 5:58, 7:28.) When Officer Frosell went back inside, Officer Baily began the paperwork to bar Mr. Caldwell from the Maple Grove Apartments. (Frosell Decl. ¶ 19.)

During this initial interaction with Mr. Caldwell, Officer Garcia interviewed Ms. Doe, and he searched her person, effects, and surroundings. (Garcia Video 3:31–9:58.) Officer Frosell assisted in the interview and search when he reentered the building. (Frosell Video 7:55–10:00; Garcia Video 8:00-9:58.) In response to questions about what narcotics she used, Ms. Doe informed the officers that she used heroin, and that she had been using heroin when the officers entered the building. (Garcia Decl. ¶ 16; Frosell Video 8:47, 9:32–9:35; Garcia Video 9:32–9:35.) After they completed an initial interview of Ms. Doe, the officers directed her to sit on the ascending stairs, approximately where Mr. Caldwell had initially been seated. (Frosell Video 10:05–10:07.) The officers then continued to search the stairs and the foyer, while intermittently speaking with Mr. Caldwell and Ms. Doe. (Frosell Decl. ¶ 21; Frosell Video 10:07–18:40.) She held a cigarette and a lighter throughout the entire interaction with the officers. (Frosell Decl. ¶ 22; Frosell Video 7:50–18:34; Garcia Video 3:26–9:50.) Meanwhile, Officer Garcia exited the building (Garcia Video 11:52), spoke with other officers outside the

building (11:52–13:55), and entered and searched the apartment building from a different, back entrance. (13:55–19:20.)

While speaking with Ms. Doe, Officer Frosell noticed a small baggie containing a brown powdery substance on the ascending stairs which was next to where Mr. Caldwell had been but was no longer sitting. (Frosell Decl. ¶ 22; Garcia Decl. ¶ 22; Caldwell Decl. ¶ 5; Frosell Video 18:40.) This was also by, but slightly below, where Ms. Doe was now sitting. (*Id.*) Officers Frosell and Garcia, based on their training, experience, and the statements of Ms. Doe, identified the baggie as heroin. (Frosell Decl. ¶ 22; Garcia Decl. ¶ 22; Frosell Video 18:57.) At this point, Officer Frosell directed the other officers to place Mr. Caldwell under arrest, and he directed Officer Bailey to take Mr. Caldwell to the police station. (Frosell Decl. ¶¶ 23–24; Garcia Decl. ¶ 23; Frosell Video 19:16–19:28.)

The parties dispute what happened when the officers arrested Mr. Caldwell and placed him in a police vehicle. Mr. Caldwell alleges that at this point, Officer "Frosell . . . and other agents of the state slam[med] me more and assaulted me as well when placing me inside the patrol vehicle. All this is recorded on Officer A.G. Garcia['s] body camera." (Caldwell Aff. in Supp. at 1; *see also* Opp. at 1–3.) However, Officer Frosell remained within the building speaking with Ms. Doe while Officer Bailey brought Mr. Caldwell to his patrol vehicle and put him inside it. (Frosell Decl. ¶ 24; Frosell Video 19:28–21:41.) Officer Frosell then left the building and approached the patrol vehicle, but by the time he reached it, Mr. Caldwell was already seated inside of the vehicle. (Frosell Video 21:41-22:05.) As he returned from searching the rear of the apartment, Officer Garcia's bodycam footage shows Mr. Caldwell kneeling in front of the porch where he had been sitting while the officers conducted their searches. (Garcia Video 19:36.) The footage shows that as Officer Garcia approached the front door, Mr. Caldwell

stood on his own power, and then Officer Bailey began to walk with him towards Officer Bailey's patrol vehicle. (*Id*. 19:36–20:12.) Officer Garcia then reentered the front door. (*Id*. 20:24.) Officer Garcia's bodycam footage only once more briefly captures Mr. Caldwell from this point onwards, when Officer Garcia looks out the front door of the apartment building, showing Mr. Caldwell seated in Officer Bailey's patrol vehicle and an officer closing the vehicle's door where Mr. Caldwell is seated. (*Id*. 22:37-59.)

Officer Bailey then transported Mr. Caldwell to the police station. (Frosell Decl. ¶ 24.) When he arrived at the police station, Officer Frosell brought Caldwell into docket and then to testify before a magistrate. (Frosell Decl. ¶ 25; Frosell Video 38:16–53:30.) The magistrate found there to be probable cause and issued warrants for trespassing and possession of an illegal, controlled substance. (Frosell Decl. ¶ 25; Frosell Video 53:30–53:35; Warrant of Arrest – Misdemeanor, Dkt. No. 31-6; Warrant of Arrest – Felony, Dkt. No. 31-7.) Officer Frosell served the warrants and transferred Caldwell to the Sheriff's Department. (Frosell Decl. ¶¶ 26–27; Frosell Video 1:24:00–1:26:45.)

Testing of the substance found in the baggie at the apartment confirmed that it contained 5.8 grams of a substance containing fentanyl. (Frosell Decl. ¶ 29; Certificate of Analysis, Dkt. No. 31-8.) On December 9, 2024, Caldwell, represented by counsel, entered a plea agreement where the Commonwealth agreed to nolle prose the charges for possession on November 6, 2023, and several other criminal charges, in exchange for guilty pleas on other pending charges, including credit card larceny, assault and battery, possession of fentanyl, and felony eluding. (Frosell Decl. ¶¶ 30–31; Plea Agreement, Dkt. No. 31-9; Nolle Prosequi Order, Dkt. No. 31-10.)

**B. Procedural Posture**

On August 14, 2024, Mr. Caldwell filed a verified complaint in this case. In his complaint, Mr. Caldwell asserts, in substance, three claims for violations of his rights under 42 U.S.C. § 1983, alleging that Officer W.R. Frosell illegally seized him, used excessive force against him, and arrested him without probable cause. (*See generally* Compl.) Mr. Caldwell requests $400,000 in damages and "dismissal [of] all charges." (*Id.* at 2.) Mr. Caldwell filed an affidavit in support of his verified complaint.[4] (Caldwell Aff. in Supp.)

On December 12, 2025, officer Frosell filed a motion for summary judgment, seeking judgment in his favor on all three counts of the complaint and the dismissal of the case. (*See generally* Motion.) On January 5, 2026, Mr. Caldwell filed opposition to Frosell's motion for summary judgment (Opp.), and declaration in support of his opposition. (Caldwell Decl.) On January 9, 2026, Mr. Caldwell supplemented his opposition with a further affidavit. (Suppl. Aff.) On January 8, 2026, Officer Frosell filed a reply in further support of his motion (Reply), and on January 23, 2026, Mr. Caldwell filed a sur-reply in further opposition. (Sur-Reply.)

II. ANALYSIS

**A. Summary Judgment Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a

[4] In the affidavit, Mr. Caldwell avers that "the Defendants continue to stalk me and my family constantly racial profile against me and my sister." (Caldwell Aff. in Supp. at 3.) The court notes that Mr. Caldwell has named only one person (Officer Frosell) as a defendant in this case. (Compl.) Mr. Caldwell alleges that Officer Frosell has been "harassing me + family for years and conspired with other officers," and that Frosell "has been involved in a number of misconducts and investigated by internal affairs for officer-involved shooting of black peoples and sicking his K9 dog on innocent peoples as well." (Caldwell Aff. in Supp. at 3.) While the Court acknowledges the seriousness of these allegations, it also notes that Mr. Caldwell does not assert a claim based on these allegations in his complaint, and therefore it does not consider them further. (*See generally* Compl.)

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

**B. Excessive Force Claim**

The Fourth Amendment prohibits police officers from using unreasonable or excessive force in the course of making an arrest. *Wilson v. Prince George's Cty., Md.*, 893 F.3d 213, 219 (4th Cir. 2018). Determining whether a use of force to conduct a seizure is "reasonable" under the Fourth Amendment "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The "reasonableness" of a use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*

The test is an objective one—asking whether an officer's actions are objectively reasonable "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. Courts consider the following factors in determining the reasonableness of a use of force: (1) the severity of the crime at issue; (2)

whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 396. The inquiry ultimately asks "whether the totality of the circumstances justifies a particular sort of . . . seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

There is no genuine issue of fact that the only force used by Officer Frosell was assisting Officer Bailey in handcuffing Mr. Caldwell and escorting Mr. Caldwell out of the apartment stairway to a chair outside the apartment entrance. This was a reasonable use of force due to Mr. Caldwell's size and his being uncooperative during the encounter. The "majority of federal circuit courts have rejected the notion that handcuffing a custodial arrestee, without more, is excessive." *E.W. v. Dolgos*, 884 F.3d 172, 193–94 (4th Cir. 2018). Accordingly, the "prevailing rule appears to be that an arrestee may pursue a Fourth Amendment excessive force claim based on the use of handcuffs only in very limited circumstances, such as when the handcuffing causes physical injury." *Id.* at 195. There is no evidence that the handcuffing caused physical injury.

Mr. Caldwell asserts allegations that other officers, particularly Officer Bailey, used excessive force at various points of the encounter the evening of November 6, 2023, and that Officer Frosell should be liable as a bystander. "An officer may be liable under [§] 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall v. Prince George's Cnty.*, 302 F.3d 188, 204 (4th Cir. 2002). There are no issues of fact to suggest that Officer Frosell had any opportunity to prevent Officer Bailey from using force against Mr. Caldwell. For example, when the encounter began and Mr. Caldwell attempted to stand up from being seated on the stairs, Officer Bailey pushed him back down. Officer Frosell was standing behind and to the left of Officer Bailey and had no opportunity to prevent

this from happening. Even if Officer Frosell did have such an opportunity, this push by Officer Bailey was a reasonable use of force against a large, uncooperative male who had refused to remove his hands from the front pocket of his hoodie. (*See* Frosell Decl. ¶ 14 (explaining that Bailey "pushed [Mr. Caldwell] back to a seated position to better control the scene and to better protect the safety of the officers present").) Finally, to the extent that Mr. Caldwell alleges he was assaulted when placed in the squad car for transport to docket (Caldwell Aff. in Supp. at 1; *see also* Opp. at 1–3), even if the court were to assume, for the purpose of argument, that an assault did occur, the bodycam footage shows that Officer Frosell was in the building speaking with Ms. Doe, too far away to prevent such an assault. (Frosell Video 19:28–21:57.)

For these reasons, the court will grant Officer Frosell's motion for summary judgment on Mr. Caldwell's excessive force claim.

**C. Illegal Seizure Claim**

The Fourth Amendment secures an individual's right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV. If an individual was "seized," the court must "determine if the law enforcement officer had adequate justification to support the seizure." *Santos v. Frederick Cnty. Bd. of Com'rs*, 725 F.3d 451, 460 (4th Cir. 2013) (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)). Consistent with the Fourth Amendment, a police officer may seize a suspect (conduct a *Terry* stop) "when he develops a reasonable suspicion, based on 'specific and articulable facts,' of criminal activity." *Brown v. Lott*, No. 25-1729, 2026 WL 1146874, at *2 (4th Cir. Apr. 28, 2026) (citing *Terry*, 392 U.S. at 21).

Officer Frosell and the other officers had a reasonable suspicion that Mr. Caldwell was engaged in illegal activity due to Caldwell being seated in the stairwell of an apartment building with a no trespassing sign whose owners had asked them to remove all non-residents.

Accordingly, the officers' initial seizure of Mr. Caldwell was justified. The court will grant summary judgment on this claim.

**D. False Arrest Claim**

To establish a § 1983 claim based on a Fourth Amendment violation for false arrest, a plaintiff must show that a seizure was effected without probable cause and that the legal process was terminated in his favor. *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014). Here, the charges that Officer Frosell arrested Mr. Caldwell for were dismissed as part of a plea agreement. Even so, Mr. Caldwell still must establish that Officer Frosell lacked probable cause to arrest him. *See Newton v. Rumery*, 480 U.S. 386, 410 (1987) (J. Stevens, dissent) (noting that a defendant's acquittal is "entirely consistent with the possibility that the police had probable cause to arrest him and did not violate any of his constitutional rights").

Probable cause is determined by a "totality-of-the-circumstances" approach. *Illinois v. Gates*, 462 U.S. 213, 230 (1983). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." *United States v. Gray*, 137 F.3d 765, 769 (4th Cir. 1998). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." *Id.* "Whether probable cause exists in a particular situation . . . always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." *Graham v. Gagnon*, 831 F.3d 176, 184 (4th Cir. 2016). In determining what conduct was known to an officer, courts consider only "information actually possessed by the officer at the critical time, or that was then reasonably available to him, and in light of the exigencies of time and circumstance that reasonably may have affected the officer's perceptions." *Id.*

Officer Frosell had probable cause to arrest Mr. Caldwell for trespassing. Mr. Caldwell admitted that he did not live at the apartment. (Frosell Video 5:58.) Mr. Caldwell's suggestion that he was visiting a resident is not relevant to the probable cause inquiry because Officer Frosell had no reason to think that Mr. Caldwell was an invited visitor. Moreover, Officer Frosell had instructions from the property owner to bar any non-resident from the property. Because Officer Frosell had probable cause to arrest Mr. Caldwell for trespassing, the court need not determine whether he also had probable cause to arrest Mr. Caldwell for possession of narcotics.

For these reasons, the court will grant summary judgment to Officer Frosell on Caldwell's false arrest claim.[5]

## III. CONCLUSION

The court will issue an appropriate order granting Frosell's motion for summary judgment and dismissing this case in its entirety.

Entered: September 30, 2026.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
Chief United States District Judge

---

[5] To the extent that Mr. Caldwell's claim could be construed as one for malicious prosecution, it would also fail due to the existence of probable cause for the arrest. *See Hunt v. Greenville Cnty. Sheriffs Dep't*, C/A No. 6:25-cv-12832-JDA-WSB, 2025 WL 3657149, at *9 (D.S.C. Dec. 2, 2025) ("Thus, there is no § 1983 claim for false arrest, false imprisonment, or malicious prosecution unless the officer lacked probable cause.") (citing *Street v. Surdyka*, 492 F.2d 368, 372–73 (4th Cir. 1974)); *see also Wardrett v. City of Rocky Mount*, No. 5:14-CV-854-BO, 2016 WL 1408091, at *3 n.2 (E.D.N.C. Apr. 7, 2016) ("As to whether plaintiff's action is specifically for false arrest or malicious prosecution, as defendants note, this is a distinction without a difference, as both actions are evaluated under the Fourth Amendment's prohibition against unreasonable seizures.") (citing *Gantt v. Whitaker*, 57 F. App'x 141, 145 (4th Cir. 2003))